## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHANNON M. SELL** <br> **Souderton, PA 18964** | : | **CIVIL ACTION** |
| | : | |
| | : | **NO.** |
| **Plaintiff** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **v.** | : | |
| | : | |
| **BOROUGH OF BRIDGEPORT,** | : | |
| **PENNSYLVANIA** | : | |
| **Bridgeport, PA 19405** | : | |
| | : | |
| **Defendant** | : | |

## COMPLAINT

### I.    PRELIMINARY STATEMENT

Plaintiff, Shannon M. Sell ("Plaintiff"), brings this action against her employer, Borough of Bridgeport, Pennsylvania ("Defendant" or "the Borough") , pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.* (the "PHRA"). Plaintiff has been employed by Defendant as a Police Officer from January of 2010 to the present, and during that entire time, she has been Defendant's only female Police Officer. In or around September 2012, Plaintiff filed a Complaint of sex discrimination and retaliation against Defendant with the Pennsylvania Human Relations Commission ("PHRC"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC") (the "2012 PHRC Complaint"). On or about October 22, 2013, while the 2012 PHRC Complaint was pending, Defendant hired John Dougherty as its Chief of Police, and Dougherty ("Chief Dougherty") became the supervisor of Plaintiff and Defendant's other Police Officers. On or about June 5, 2014, when Chief Dougherty was the Chief of Police, Plaintiff and Defendant entered into a written agreement to settle the 2012

PHRC Complaint. In that agreement, Plaintiff agreed to withdraw the 2012 PHRC Complaint including her claims for monetary relief, and Defendant agreed that Plaintiff had a right to a working environment free of discrimination, and that it would not retaliate against Plaintiff in the future for filing the 2012 PHRC Complaint or otherwise protesting alleged practices of discrimination. Despite what Defendant agreed to in the settlement agreement, from June 2014 until June 2015, Chief Dougherty repeatedly discriminated against Plaintiff because of her sex, and continually retaliated against Plaintiff because she had filed the 2012 PHRC Complaint, and an EEOC Charge in December 2014 which alleged that Defendant had discriminated and retaliated against Plaintiff after she had withdrawn the 2012 PHRC Complaint. Chief Dougherty's actions directed at Plaintiff commencing in June 2014 were so severe or pervasive that they created a hostile work environment for Plaintiff that did not abate until Chief Dougherty left the employment of Defendant on or about June 26, 2015. Plaintiff is entitled to economic and noneconomic damages as well as other relief to remedy Defendant's unlawful acts and practices.

## II.    PARTIES

1.    Plaintiff is an adult female and a citizen of the Commonwealth of Pennsylvania, residing in Souderton, Pennsylvania.

2.    Defendant is and at all relevant times was a Borough in the Commonwealth of Pennsylvania, with an office and principal place of business located in Bridgeport, Pennsylvania.

3.    Plaintiff is and at all relevant times was an "employee" of Defendant within the meaning of Title VII and the PHRA.

4.    Defendant is and at all relevant times was an "employer" within the meaning of Title VII and the PHRA.

2

5.      Title VII and the PHRA are applicable to Defendant for purposes of this proceeding.

6.      At all relevant times, Defendant acted through its agents, servants and employees, acting within the course and scope of their agency and employment, and in furtherance of the mission, business, affairs and corporate policies of Defendant.

## III.    JURISDICTION AND VENUE

7.      The Court has jurisdiction over Plaintiff's claims arising under Title VII pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §1331.

8.      The Court has supplemental jurisdiction over Plaintiff's claims arising under the PHRA pursuant to 28 U.S.C. §1367(a).

9.      Venue is proper in this judicial district pursuant to 42 U.S.C. §2000(e)-5(f)(3) because the unlawful employment practices occurred in this district, and the employment records relevant to those practices are maintained here.

10.     Venue is proper in this judicial district with regard to Plaintiff's PHRA claims pursuant to 28 U.S.C. §1391 because Defendant resides in this district, the events and occurrences giving rise to Plaintiff's claims occurred in this district, and Defendant is subject is personal jurisdiction in this district.

## IV.    PLAINTIFF'S COMPLIANCE WITH ADMINISTRATIVE REQUIREMENTS OF TITLE VII AND THE PHRA

11.      On or about December 4, 2014, Plaintiff filed a Charge of Discrimination with the EEOC, which was cross-filed with the PHRA, in which Plaintiff alleged that Defendant had discriminated against her because of her sex, retaliated against her, and subjected her to a hostile working environment (the "December 2014 EEOC Charge").

12.     The December 2014 EEOC Charge is the predicate administrative filing for this action.

13.     On or about August 31, 2016, the EEOC issued a Determination with regard to the December 2014 EEOC Charge, in which it found that there was "reasonable cause to believe that [Plaintiff] was subjected to disparate terms and conditions of employment, and harassment, because of her sex (female) and her previous opposition to discrimination, in violation of Title VII." A true and correct copy of the EEOC Determination is attached hereto as Exhibit "1".

14.     On or about December 20, 2016, the U.S. Department of Justice, Civil Rights Division, issued a Notice of Right to Sue to Plaintiff based upon the December 2014 EEOC Charge, informing Plaintiff of her right to commence a civil action against Defendant pursuant to Title VII within 90 days of her receipt of the Notice of Right to Sue. A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit "2".

15.     The Notice of Right to Sue was mailed to Plaintiff, in care of her counsel, on December 23, 2016, and was received by Plaintiff on December 29, 2016.

16.     This action is timely under Title VII because Plaintiff is filing the action within 90 days of her receipt of the Notice of Right to Sue.

17.     This action is also timely under the PHRA.

**V.     FACTS**

**A.     Plaintiff's Employment History with Defendant**

18.     To the best of Plaintiff's knowledge, prior to 2010, Defendant had never employed a female as a Police Officer.

19.     In or around January 2010, Defendant hired Plaintiff as a part-time Police Officer.

20.     Plaintiff was employed by Defendant as a part-time Police Officer from January 2010 until June 12, 2012, when Plaintiff was sworn in as a full-time Police Officer.

21.     Plaintiff has been employed by Defendant as a full-time Police Officer from June 12, 2012 to the present.

22.     From January 2010 to the present, Plaintiff has been Defendant's only female Police Officer.

23.     From 2014 to the present, Defendant has employed a total of approximately 14 male Police Officers.

24.     At all relevant times, Defendant's Chief of Police was the chief executive of Defendant's Police Department who, under the direction of Defendant's Mayor, was in charge of Defendant's police force and supervised its members.

25.     From 2010 until approximately June 2013, Zenny Martyniuk ("Chief Martyniuk"), a male, was Defendant's Chief of Police.

26.     Plaintiff and all of Defendant's other Police Officers reported to Chief Martyniuk from 2010 until June 2013.

27.     When Chief Martyniuk retired in or around June 2013, Defendant had an opening for Chief of Police; and on or about October 22, 2013, Defendant hired Chief Dougherty to replace Chief Martyniuk.

28.     Plaintiff and all of Defendant's other Police Officers reported to Chief Dougherty, in his capacity as Chief of Police, from October 2013 until approximately June 26, 2015.

29.     Chief Dougherty left the employment of Defendant on or about June 26, 2015, after having served as Chief of Police for approximately 20 months.

30.     On or about July 1, 2015, Chief Dougherty was replaced as Chief of Police by Robert Ruxton, a male ("Chief Ruxton"); and Chief Ruxton has served as Defendant's Chief of Police from approximately July 2015 to the present.

31.     From July 2015 to the present, Plaintiff and all of Defendant's other Police Officers have reported to Chief Ruxton.

**B.     Plaintiff's Job Performance When Chief Martyniuk Was Chief of Police**

32.     On or about January 7, 2011, at which time Plaintiff had been employed by Defendant for approximately one year, Chief Martyniuk prepared a first written performance evaluation of Plaintiff (the "January 2011 Evaluation").

33.     In the January 2011 Evaluation, Chief Martyniuk evaluated Plaintiff's performance in the year 2010.

34.     In the January 2011 Evaluation, Chief Martyniuk made the following comments regarding Plaintiff's performance:

- Very sociable and outgoing.

- Outstanding personality for this job.

- Unusually well groomed; very neat; excellent taste in dress.

- Excellent health; no fatigue.

- Always regular and prompt; volunteers for overtime when needed.

- Quite conscientious about neatness and cleanliness.

- Usually takes care of necessary tasks and completes with reasonable promptness.

- Strives hard; has high desire to achieve.

- Understands all phases of work.

- Volume of work is satisfactory.

6

- Tolerates most pressure; very good tolerance for crises.

- Always very polite and willing to help.

- Usually accurate; makes only average number of mistakes.

- Grasps instructions with average ability.

- Has average imagination; has reasonable number of new ideas.

35.     Chief Martyniuk further stated in the January 2011 Evaluation that Plaintiff's major strong points were her "willingness to work as needed", that she was "very polite [and] sociable", and that she was a "team player."

36.     Chief Martyniuk also wrote in the January 2011 Evaluation that "for the length of time employed, [Plaintiff] has progressed well in all aspects of the job."

37.     On or about November 11, 2012, Chief Martyniuk completed a second performance evaluation of Plaintiff (the "November 2012 Evaluation").

38.     The November 2012 Evaluation evaluated Plaintiff's performance in the period that followed the completion of the January 2011 Evaluation.

39.     In the November 2012 Evaluation, Chief Martyniuk made the following comments regarding Plaintiff's performance:

- Extremely sociable; excellent at establishing good will.

- Outstanding personality for this job.

- Unusually well groomed; very neat; excellent taste in dress.

- Excellent health; no fatigue.

- Always regular and prompt; volunteers for overtime when needed.

- Unusually neat, clean and orderly.

- Usually takes care of necessary tasks and completes with reasonable promptness.

- Strives hard; has high desire to achieve.

- Understands all phases of work.

- Volume of work is satisfactory.

- Tolerates most pressure; very good tolerance for crises.

- Always very polite and willing to help.

- Usually accurate; makes only average number of mistakes.

- Grasps instructions with average ability.

- Has average imagination; has reasonable number of new ideas.

40.     In the November 2012 Evaluation, Chief Martyniuk noted that Plaintiff's major strong points were that she was "very polite [and] sociable," that she was "always looking for violations," and that she had the "most tags [and] DUI arrests [in the Department]."

41.     In the November 2012 Evaluation, Chief Martyniuk reported that Plaintiff's performance had improved following the January 2011 Evaluation.

**C.     Plaintiff's 2012 PHRC Complaint and Resolution Thereof**

42.     Plaintiff filed the 2012 PHRC Complaint against Defendant in or around September 2012.

43.     The 2012 PHRC Complaint alleged, *inter alia*, that Plaintiff had been sexually harassed and discriminated against by male Police Officers employed by Defendant, and that Defendant's upper management had failed to take action to protect Plaintiff from the acts of discrimination and harassment.

44.     Defendant received notice of the 2012 PHRC Complaint in or before December 2012.

45.     When Chief Dougherty was hired by Defendant to replace Chief Martyniuk as Chief of Police, the 2012 PHRC Complaint was pending before the PHRC and/or the EEOC; and Chief Dougherty became aware of the PHRC Complaint in or before November 2013.

46.     Soon after Chief Dougherty was hired by Defendant, while the 2012 PHRC Complaint was pending, he began to treat Plaintiff in a discriminatory manner because of her sex; and his discriminatory acts directed at Plaintiff included badgering and picking on Plaintiff; singling out Plaintiff unfair for criticism and belittlement; and generally treating Plaintiff in a way that showed he had no tolerance or respect for a female Police Officer.

47.     Chief Dougherty's harassment and mistreatment of Plaintiff during the pendency of 2012 PHRC Complaint was also in retaliation for Plaintiff's filing and prosecution of the 2012 PHRC Complaint.

48.     At a meeting that took place in or around June 2014, Chief Dougherty assured Plaintiff that if she agreed to withdraw the 2012 PHRC Complaint, he would treat her fairly and equally pursuant to his "open door" policy, and that he would comply with the law by not discriminating or retaliating against Plaintiff in the future.

49.     Wanting to move forward with her career in law enforcement in a positive manner, Plaintiff took Chief Dougherty at his word, and relying upon Defendant's and Chief Dougherty assurances, Plaintiff entered into a written "Settlement Agreement and Mutual Release" with Defendant on June 5, 2014 (the "June 2014 Agreement"), in which Plaintiff agreed to withdraw and dismiss the 2012 PHRC Complaint, and to waive all claims for monetary relief for acts of discrimination and retaliation that occurred prior to the execution of the June 2014 Agreement, in exchange for certain promises made by Defendant in the June 2014 Agreement.

50.     As a result of the June 2014 Agreement, Plaintiff received no monetary compensation for any personal harm caused by Defendant's prior discriminatory and retaliatory acts; however, Defendant did agree to pay legal fees to Plaintiff's former attorney.

51.     The June 2014 Agreement further stated, in part, that Plaintiff was withdrawing the 2012 PHRC Complaint as well as her legal claims against Defendant that were the subject of the 2012 PHRC Complaint, "in exchange for the consideration for the said withdrawal"; and the agreed upon consideration, which was the inducement for Plaintiff to enter into the June 2014 Agreement, included the following representations made by Defendant in the June 2014 Agreement:

> It is fully agreed by and among the parties that all employees have a right to a discrimination free working environment in compliance with Federal and State law and [Defendant's] policies.

> * * * *

> [Defendant] confirms that it will not retaliate against [Plaintiff] for bringing her concerns to [Defendant's] attention and filing her claims with the requisite authorities.

52.     Based upon Defendant's written and oral representations, Plaintiff entered into the June 2014 Agreement expecting that Defendant and Chief Dougherty would honor their commitment to not further discriminate or retaliate against Plaintiff.

53.     Plaintiff also expected that Defendant and Chief Dougherty would adhere to their obligations under Defendant's General Order #2013-001, dated January 8, 2013, which prohibits unlawful harassment, discrimination and retaliation within Defendant's Police Department.

54.     Despite their said assurances and representations, Defendant and Chief Dougherty continued to unlawfully discriminate and retaliate against Plaintiff after the June 2014 Agreement was entered into.

D.     **From June 2014 to June 2015, Chief Dougherty**
       **Discriminated Against Plaintiff Because of Her**
       **Sex and Retaliated Against Plaintiff for Her**
       **Protected Activity Under Title VII and the PHRA**

55.     Commencing in June 2014 and continuing until December 2014, Defendant, primarily through the acts of Chief Dougherty, repeatedly discriminated against Plaintiff because of her sex, and continuously retaliated against Plaintiff for her previous complaints of discrimination and retaliation, including the 2012 PHRC Complaint.

56.     The ongoing and repeated acts and practices of unlawful discrimination, retaliation and harassment to which Plaintiff was subjected by Chief Dougherty from June 2014 until December 2014 created a hostile work environment for Plaintiff.

57.     The December 2014 EEOC Charge, which was filed by Plaintiff on or about December 4, 2014, alleged of acts of discrimination and retaliation to which Plaintiff was subjected by Defendant and Chief Dougherty *after* the June 2014 Agreement was entered into.

58.     After learning of the December 2014 EEOC Charge, Chief Dougherty became even more hostile and antagonistic toward Plaintiff, and he continued to discriminate and retaliate against Plaintiff until on or about June 26, 2015, when he left the employment of Defendant.

59.     In its Determination issued on August 31, 2016 regarding the December 2014 EEOC Charge, the EEOC validated Plaintiff's complaints when it found that:

> The record shows that [Plaintiff] previously complained of discriminatory treatment by [Defendant's] former Chief of Police [Dougherty] because of her sex (female). The evidence obtained during the investigation demonstrates that [Plaintiff] was subjected to sufficiently pervasive harassment and adverse employment action from [Defendant's] former Chief of Police after she complained of discrimination. The investigation revealed that [Defendant's] purported reason for [Plaintiff's] treatment during

11

the time she was supervised by the former Chief of Police is
pretext to mask retaliatory motives.

*See* Exhibit "1".

60.     The specific acts of discrimination, retaliation and harassment which Chief
Dougherty leveled against Plaintiff between June 2014 and June 2015, which in totality created a
hostile work environment, included the following:

(a)     Chief Dougherty unreasonably and arbitrarily denied Plaintiff the same
opportunities for overtime that he afforded male Police Officers, as a result of which the males
were able to earn more overtime than Plaintiff; and Chief Dougherty facilitated this unfair
practice by manipulating schedules, denying Plaintiff's requests for overtime, and favoring male
Police Officers over Plaintiff when it came to approving and allowing overtime;

(b)     Chief Dougherty forced Plaintiff write a letter to a court that Plaintiff appeared
before frequently for Defendant, stating that Chief Dougherty had requested that Plaintiff not be
paid overtime to attend a hearing and that Plaintiff's future hearings should be scheduled on days
when Plaintiff was otherwise scheduled to work.  As a result of this requirement, Plaintiff was
denied overtime for attending the hearings.  The requirement was not imposed on male Police
Officers, who were permitted to attend court hearings on days and at times when they were not
scheduled to work, so that they could collect overtime;

(c)     Chief Dougherty unreasonably and improperly removed Plaintiff from the
Montgomery County Drug Task Force (the "DTF"), and then continually refused to reinstate
Plaintiff to the DTF, even though Plaintiff had the most drug arrests of any Police Officer
employed by Defendant and after Plaintiff had been appointed to the DTF in May 2013, she
performed very well in that role.  Chief Dougherty did not remove any male Police Officer from

the DTF; and his removal and failure to reinstate Plaintiff to the DTF caused Plaintiff to lose income, while males on the DTF continued to be paid for their work on the DTF;

(d)     Chief Dougherty often criticized Plaintiff's written reports, making changes and edits to her reports (such as correcting spelling and grammatical errors) that were trivial, insignificant and/or nit-picking. Male Police Officers' written reports were not subject to such scrutiny or editing by Chief Dougherty — even though they too made mistakes — and Chief Dougherty at times purposely marked up Plaintiff's written reports to such an extent that Plaintiff could not read or understand his writing, or what he wanted her to do;

(e)     Chief Dougherty frequently and unfairly yelled at, degraded and bullied Plaintiff at the Police Station so that male Police Officers and others could hear. Male Police Officers were not subjected to this kind of harassment; and Chief Dougherty would purposely keep the door of his office open when he would scream at and berate Plaintiff, but he would keep the door closed when he would counsel or criticize male Police Officers;

(f)     Chief Dougherty unfairly and improperly criticized and humiliated Plaintiff in the presence of offenders, and in front of a witness outside of a courtroom;

(g)     Chief Dougherty unfairly and arbitrarily manipulated Defendants' "Force-Out" procedure[1] so that Plaintiff was compelled to cover shifts for male Police Officers who could not work when they were scheduled to work, but male Police Officers were not Forced-Out to the same extent or as often as Plaintiff. Furthermore, Chief Dougherty allowed male Police Officers to make excuses for being unavailable for a Force-Out, whereas Plaintiff was not afforded this luxury;

---

[1] A Force-Out refers to a Police Officer who is not scheduled to work on a shift being forced to cover a shift for another officer who had been scheduled to work but was unable to report for duty.

13

(h)     Chief Dougherty wrote Plaintiff up on July 24, 2014, for failing to properly patrol the Borough on the evening of June 5, 2014 when she spent approximately one hour in the parking lot of a Wawa store in the Borough.  However, Chief Dougherty had sent an e-mail to Plaintiff and the male Police Officers on May 30, 2014, informing them that "extra attention" was to be paid to this Wawa store due to "loitering and other suspicious activity in the late afternoon and evening hours."  Accordingly, Plaintiff was following orders.  Furthermore, Chief Dougherty did not write up or discipline male Police Officers who spent more time patrolling the Wawa store than Plaintiff did;

(i)     Chief Dougherty wrote Plaintiff up on July 24, 2014 for allegedly falsifying time on her patrol log for June 5, 2014, when Plaintiff was following the accepted practice of Defendant's Police Officers of estimating times of their activities on their patrol logs at the end of their shifts.  Chief Dougherty did not write up or discipline male Police Officers who underestimated times of their activities on their patrol logs, who entered inaccurate times and/or who misidentified their activities on their patrol logs;

(j)     Chief Dougherty wrote Plaintiff up on July 24, 2014 for failing to charge a citizen with a crime on May 30, 2014, when the victim did not want to press charges and Plaintiff had exercised her discretion in declining to issue charges.  On the other hand, Chief Dougherty did not write up or discipline male Police Officers to whom he gave more discretion whether or not to charge individuals with crimes;

(k)     Chief Dougherty wrote Plaintiff up on October 14, 2014 for calling out sick on September 24, 2014, even though Plaintiff had appropriately sent an e-mail to Chief Dougherty that day stating that she could not report to work because her son was ill.  On the other hand,

Chief Dougherty was aware that a male Police Officer who called out sick for his 7:00 p.m. to 7:00 a.m. shift went to the shooting range on overtime and was paid overtime for the day;

(l)     Chief Dougherty reprimanded Plaintiff for how she used her time on December 11, 2014, when he neither criticized nor disciplined a male Police Officer who was paid for times spent at a location where he was employed part-time, for time spent attending Mass, and for time sitting at the Police Station with a headache;

(m)     In January 2015, Chief Dougherty prepared a performance evaluation of Plaintiff for 2014 which was replete with false unfair criticisms of Plaintiff, including references to the write ups and reprimands mentioned previously; and this performance evaluation contradicted Chief Martyniuk's truthful performance reviews of Plaintiff;

(n)     Defendant unfairly criticized Plaintiff for allegedly disregarding her chain-of-command by complaining to the Mayor of Defendant that Chief Dougherty had forced her to report to work on December 31, 2014 from 1:00 a.m. to 7:00 a.m., when her child was ill and she had requested that another Police Officer be assigned to cover the shift.  This criticism was totally unwarranted because Chief Dougherty had sent an e-mail to Plaintiff on December 28, 2014, authorizing her to contact the Mayor if she had a complaint about the assignment, and Defendant's written policy permitted her to appeal to the Mayor;

(o)     Chief Dougherty threatened Plaintiff for keeping her part-time position as an emergency room nurse at Abington Memorial Hospital ("AMH"), which Plaintiff had occupied since 1993, and then harassed Plaintiff and manipulated her work schedule to such an extent that she could no longer continue working at AMH.  On the other hand, male Police Officers who had second jobs were not harassed or intimidated by Chief Dougherty for maintaining those jobs; and

15

(p)     Chief Dougherty generally harassed, intimidated, berated and belittled Plaintiff because of her sex and with a retaliatory motive.

61.     Defendant's upper management and elected officials were aware of Chief Dougherty's discriminatory and retaliatory treatment of Plaintiff that began in June 2014, but took no action to prevent it or to stop it from occurring.

**E.     Harm Suffered by Plaintiff**

62.     As a result of Defendant's discriminatory and retaliatory acts and practices alleged herein, Plaintiff was caused to suffer pain, suffering, inconvenience, mental anguish, fear, anxiety, embarrassment, humiliation, and loss of enjoyment of life.

63.     As a result of Defendant's discriminatory and retaliatory acts and practices alleged herein, Plaintiff was caused to suffer chest pain, palpitations and other heart-related ailments for which she was treated in a hospital and by a cardiologist.

64.     As a result of Defendant's discriminatory and retaliatory acts and practices alleged herein, Plaintiff was required to seek and undergo psychological treatment for, among other problems, post-traumatic stress disorder (PTSD).

65.     As a result of Defendant's discriminatory and retaliatory acts and practices alleged herein, Plaintiff was caused to suffer a loss of wages and benefits, including loss of overtime pay and loss of extra pay for working on the DTF.

66.     As a result of Defendant's discriminatory and retaliatory acts and practices alleged herein, Plaintiff lost her part-time job as an emergency room nurse at AMH, which has caused and will cause Plaintiff to suffer an additional loss of earnings.

**F.      Plaintiff's Performance from July 2015 to the Present**

67.     As alleged above, after Chief Dougherty left the employment of Defendant on or about June 26, 2015, he was replaced by Chief Ruxton, who has been Plaintiff's supervisor from approximately July 1, 2015 to the present.

68.     On or about January 27, 2016, Chief Ruxton completed a performance evaluation of Plaintiff for the period of July 1, 2015 to December 31, 2015 (the "2015 Evaluation").

69.     In the 2015 Evaluation, Chief Ruxton rated Plaintiff as either "Meets Requirements" or "Exceeds Requirements" in every category of performance that he evaluated.

70.     The comments made by Chief Ruxton about Plaintiff in the 2015 Evaluation included the following:

- [Plaintiff] seems to have a tendency to dive into an area full steam and stay with it.  DUI enforcement comes to mind as there was a time here that she made more DUI arrests than all other officers combined.

- [Plaintiff] was third in the department when counting number of calls for service she answered.  This isn't by the luck of the draw, it's because she stepped up and took the calls.

- I've seen [Plaintiff interact] with the public at [Borough] affairs and the people love her, so I guess she's doing something right.  I would rather she build relations with the public than aimlessly ride around without an agenda.  [Plaintiff] is by far the best PR officer [in] the department.  Unfortunately, when an officer stops to talk to people they are viewed as wasting time.  I view it as building a bridge between the department and the public.

- [Plaintiff] gets along great with me and will tackle any task that I ask.

- There was a time when the previous Chief [Dougherty] sent work back for [Plaintiff] and other officers to correct.  Since I've started to approve reports I see nothing major to worry about.  Now that I've installed spell check in the in-car computers everyone is doing better.

71.     In his concluding remarks in the 2015 Evaluation, Chief Ruxton wrote that Plaintiff "is so close to Exceeds Requirements that she can taste it," and that Plaintiff "has the

17

spirit and determination to overcome the bad things in her life and hopefully will continue to be a rising star here someday."

72.    Chief Ruxton's overall rating of Plaintiff, as set forth in the 2015 Evaluation, ranged between "Meets Requirements" and "Exceeds Requirements."

73.    Although Plaintiff has not received a written performance evaluation from Chief Ruxton for 2016, she believes and avers that Chief Ruxton was thoroughly satisfied with her performance in 2016.

74.    Plaintiff has received no disciplinary action from Chief Ruxton from January 2016 to the present.

75.    To show how highly Chief Ruxton regards Plaintiff's performance, he has (a) assigned Plaintiff to be in charge of First Aid and CPR training; (b) appointed Plaintiff as the Juvenile Officer, the Community Resource Officer and the School Resource Officer; (c) given Plaintiff the assignment of creating a policy, and providing training for the use of Narcan for emergency treatment of opioid overdose; and (d) appointed Plaintiff as Accreditation Manager for Defendant's Police Department.

## VI.    FIRST CAUSE – TITLE VII – DISCRIMINATION

76.    Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 75, above, as if set forth fully and at length herein.

77.    Commencing in June 2014 and continuing until June 2015 (known herein as the "Relevant Period"), Defendant caused Plaintiff to be subjected to disparate treatment because of her sex in violation of Title VII.

78.    Defendant intentionally discriminated against Plaintiff during the Relevant Period because of her sex by engaging in and committing the acts and practices alleged above.

79.    Defendant treated similarly-situated male Police Officers better and more favorably than Plaintiff during the Relevant Period.

80.    Plaintiff's status as a female was a motivating factor in the discriminatory acts and practices to which Plaintiff was subjected by Defendant during the Relevant Period.

81.    Plaintiff's status as a female was a determinative factor in the discriminatory acts and practices to which Plaintiff was subjected by Defendant during the Relevant Period.

82.    As a result of the discriminatory acts and practices to which Plaintiff was subjected by Defendant during the Relevant Period, Plaintiff was caused to suffer pain, suffering, inconvenience, mental anguish, fear, anxiety, embarrassment, humiliation and loss of enjoyment of life, for which Plaintiff was required to seek and undergo medical and psychological treatment, and to incur expenses for same.

83.    As a result of Defendant's said discriminatory acts and practices, Plaintiff has suffered and will suffer a loss of wages, earnings, income and benefits.

84.    As a result of Defendant's said discriminatory acts and practices, Plaintiff is entitled to declaratory relief declaring that the discriminatory acts and practices were in violation of Title VII.

85.    As a result of Defendant's said discriminatory acts and practices, Plaintiff is entitled to injunctive relief enjoining and restraining the Defendant from committing further acts of discrimination in violation of Title VII.

86.    As a result of Defendant's said discriminatory acts and practices, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## VII.    SECOND CAUSE — TITLE VII — RETALIATION

87.    Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 86, above, as if set forth fully and at length herein.

88.    Plaintiff engaged in protected activity under Title VII when she filed the 2012 PHRC Complaint and the December 2014 EEOC Charge, and when she complained to Defendant's upper management of acts and practices of sex discrimination and retaliation (collectively, the "Protected Activity").

89.    The Protected Activity was based upon Plaintiff's reasonable, good faith belief that her right to be free from sex discrimination and retaliation had been and was being violated by Defendant.

90.    As alleged above, Defendant subjected Plaintiff to materially adverse actions after she engaged in the Protected Activity.

91.    The adverse acts taken by Defendant against Plaintiff during the Relevant Period, after she engaged in the Protected Activity, were serious enough that they well might have discouraged a reasonable employee from engaging in such protected activity.

92.    There was a causal connection between Plaintiff's Protected Activity and the adverse acts that were taken against Plaintiff by Defendant during the Relevant Period.

93.    Plaintiff's Protected Activity had a determinative effect on the adverse acts to which Plaintiff was subjected by Defendant during the Relevant Period.

94.    Accordingly, Defendant violated the anti-retaliation provision of Title VII during the Relevant Period.

95.    As a result of the retaliatory acts and practices to which Plaintiff was subjected by Defendant during the Relevant Period, Plaintiff was caused to suffer pain, suffering,

inconvenience, mental anguish, fear, anxiety, embarrassment, humiliation and loss of enjoyment of life, for which Plaintiff was required to seek and undergo medical and psychological treatment, and to incur expenses for same.

96. As a result of Defendant's said retaliatory acts and practices, Plaintiff has suffered and will suffer a loss of wages, earnings, income and benefits.

97. As a result of Defendant's said retaliatory acts and practices, Plaintiff is entitled to declaratory relief declaring that the retaliatory acts and practices were in violation of Title VII.

98. As a result of Defendant's said retaliatory acts and practices, Plaintiff is entitled to injunctive relief enjoining and restraining the Defendant from committing further acts of retaliation in violation of Title VII.

99. As a result of Defendant's said retaliatory acts and practices, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## VIII.   THIRD CAUSE — TITLE VII — HOSTILE WORK ENVIRONMENT

100. Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 99, above, as if set forth fully and at length herein.

101. The discriminatory and retaliatory acts and practices which were committed by Defendant against Plaintiff during the Relevant Period constituted unlawful harassment, and caused Plaintiff to be subjected to a hostile work environment in violation of Title VII.

102. Defendant is liable for the discriminatory and retaliatory acts and practices of Chief Dougherty committed against Plaintiff during the Relevant Period, which caused Plaintiff to be harassed to such an extent that she was subjected to a hostile work environment.

103.    The said discriminatory and retaliatory acts and practices committed by Defendant against Plaintiff during the Relevant Period, which caused Plaintiff to be subjected to a hostile work environment, were not welcomed by Plaintiff.

104.    The said discriminatory and retaliatory acts and practices were motivated by Plaintiff's status as a female.

105.    The said discriminatory and retaliatory acts were motivated by the fact that Plaintiff had engaged in the Protected Activity.

106.    The said discriminatory and retaliatory acts and practices were so severe or pervasive that a reasonable person in Plaintiff's position would have found Plaintiff's work environment to be hostile or abusive.

107.    Plaintiff believed that her work environment during the Relevant Period was hostile or abusive as a result of the said discriminatory and retaliatory acts and practices.

108.    Plaintiff suffered adverse tangible employment actions as a result of the hostile work environment to which she was subjected by Defendant during the Relevant Period.

109.    As a result of Defendant's violations of Title VII, which caused Plaintiff to be subjected to a hostile work environment during the Relevant Period, Plaintiff was caused to suffer pain, suffering, inconvenience, mental anguish, fear, anxiety, embarrassment, humiliation and loss of enjoyment of life, for which Plaintiff was required to seek and undergo medical and psychiatric treatment, and to incur expenses for same.

110.    As a result of the said violations, Plaintiff has suffered and will suffer a loss of wages, earnings, income and benefits.

111.    As a result of the said violations, Plaintiff is entitled to declaratory relief declaring that the acts and practices were in violation of Title VII.

112.    As a result of the said violations, Plaintiff is entitled to injunctive relief enjoining and restraining the Defendant from committing further violations of Title VII.

113.    As a result of the said violations, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## IX.    FOURTH CAUSE — PHRA — DISCRIMINATION

114.    Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 113, above, as if set forth fully and at length herein.

115.    Commencing in June 2014 and continuing until June 2015 (the "Relevant Period"), Defendant caused Plaintiff to be subjected to disparate treatment because of her sex in violation of the PHRA.

116.    Defendant intentionally discriminated against Plaintiff during the Relevant Period because of her sex by engaging in and committing the acts and practices alleged above.

117.    Defendant treated similarly-situated male Police Officers better and more favorably than Plaintiff during the Relevant Period.

118.    Plaintiff's status as a female was a motivating factor in the discriminatory acts and practices to which Plaintiff was subjected by Defendant during the Relevant Period.

119.    Plaintiff's status as a female was a determinative factor in the discriminatory acts and practices to which Plaintiff was subjected by Defendant during the Relevant Period.

120.    As a result of the discriminatory acts and practices to which Plaintiff was subjected by Defendant during the Relevant Period, Plaintiff was caused to suffer pain, suffering, inconvenience, mental anguish, fear, anxiety, embarrassment, humiliation and loss of enjoyment of life, for which Plaintiff was required to seek and undergo medical and psychological treatment, and to incur expenses for same.

23

121.    As a result of Defendant's said discriminatory acts and practices, Plaintiff has suffered and will suffer a loss of wages, earnings, income and benefits.

122.    As a result of Defendant's said discriminatory acts and practices, Plaintiff is entitled to declaratory relief declaring that the discriminatory acts and practices were in violation of the PHRA.

123.    As a result of Defendant's said discriminatory acts and practices, Plaintiff is entitled to injunctive relief enjoining and restraining the Defendant from committing further acts of discrimination in violation of the PHRA.

124.    As a result of Defendant's said discriminatory acts and practices, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## X.    FIFTH CAUSE — PHRA— RETALIATION

125.    Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 124, above, as if set forth fully and at length herein.

126.    Plaintiff engaged in Protected Activity under the PHRA when she filed the 2012 PHRC Complaint and the December 2014 EEOC Charge, and when she complained to Defendant's upper management of acts and practices of sex discrimination and retaliation.

127.    The Protected Activity was based upon Plaintiff's reasonable, good faith belief that her right to be free from sex discrimination and retaliation had been and was being violated by Defendant.

128.    As alleged above, Defendant subjected Plaintiff to materially adverse actions after she engaged in the Protected Activity.

129.   The adverse acts taken by Defendant against Plaintiff during the Relevant Period, after she engaged in the Protected Activity, were serious enough that they well might have discouraged a reasonable employee from engaging in such protected activity.

130.   There was a causal connection between Plaintiff's Protected Activity and the adverse acts that were taken against Plaintiff by Defendant during the Relevant Period.

131.   Plaintiff's Protected Activity had a determinative effect on the adverse acts to which Plaintiff was subjected by Defendant during the Relevant Period.

132.   Accordingly, Defendant violated the anti-retaliation provision of the PHRA during the Relevant Period.

133.   As a result of the retaliatory acts and practices to which Plaintiff was subjected by Defendant during the Relevant Period, Plaintiff was caused to suffer pain, suffering, inconvenience, mental anguish, fear, anxiety, embarrassment, humiliation and loss of enjoyment of life, for which Plaintiff was required to seek and undergo medical and psychological treatment, and to incur expenses for same.

134.   As a result of Defendant's said retaliatory acts and practices, Plaintiff has suffered and will suffer a loss of wages, earnings, income and benefits.

135.   As a result of Defendant's said retaliatory acts and practices, Plaintiff is entitled to declaratory relief declaring that the retaliatory acts and practices were in violation of the PHRA.

136.   As a result of Defendant's said retaliatory acts and practices, Plaintiff is entitled to injunctive relief enjoining and restraining the Defendant from committing further acts of retaliation in violation of the PHRA.

137.   As a result of Defendant's said retaliatory acts and practices, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## XI.   SIXTH CAUSE — PHRA — HOSTILE WORK ENVIRONMENT

138.   Plaintiff incorporates by reference all of the allegations of Paragraphs 1 through 137, above, as if set forth fully and at length herein.

139.   The discriminatory and retaliatory acts and practices which were committed by Defendant against Plaintiff during the Relevant Period constituted unlawful harassment, and caused Plaintiff to be subjected to a hostile work environment in violation of the PHRA.

140.   Defendant is liable for the discriminatory and retaliatory acts and practices of Chief Dougherty committed against Plaintiff during the Relevant Period, which caused Plaintiff to be harassed to such an extent that she was subjected to a hostile work environment.

141.   The discriminatory and retaliatory acts and practices committed by Defendant against Plaintiff during the Relevant Period, which caused Plaintiff to be subjected to a hostile work environment, were not welcomed by Plaintiff.

142.   The said discriminatory and retaliatory acts and practices were motivated by Plaintiff's status as a female.

143.   The said discriminatory and retaliatory acts were motivated by the fact that Plaintiff had engaged in the Protected Activity.

144.   The said discriminatory and retaliatory acts and practices were so severe or pervasive that a reasonable person in Plaintiff's position would have found Plaintiff's work environment to be hostile or abusive.

145.   Plaintiff believed that her work environment during the Relevant Period was hostile or abusive as a result of the said discriminatory and retaliatory acts and practices.

146.   Plaintiff suffered adverse tangible employment actions as a result of the hostile and/or abusive work environment to which she was subjected during the Relevant Period.

147.     As a result of Defendant's violations of the PHRA, which caused Plaintiff to be subjected to a hostile work environment during the Relevant Period, Plaintiff was caused to suffer pain, suffering, inconvenience, mental anguish, fear, anxiety, embarrassment, humiliation and loss of enjoyment of life, for which Plaintiff was required to seek and undergo medical and psychiatric treatment, and to incur expenses for same.

148.     As a result of the said violations, Plaintiff has suffered and will suffer a loss of wages, earnings, income and benefits.

149.     As a result of the said violations, Plaintiff is entitled to declaratory relief declaring that the acts and practices were in violation of the PHRA.

150.     As a result of the said violations, Plaintiff is entitled to injunctive relief enjoining and restraining the Defendant from committing further violations of the PHRA.

151.     As a result of the said violations, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff prays that the Court grant her the following relief to remedy Defendant's violations of Title VII and the PHRA:

(a)     Declaring the acts and practices of Defendant complained of herein to be in violation of Title VII and the PHRA;

(b)     Enjoining and restraining the violations by Defendant of Title VII and the PHRA;

(c)     Granting Plaintiff appropriate injunctive and equitable relief, including without limitation an order enjoining the Defendant from committing further violations of Title VII and the PHRA, and compelling it to take appropriate measures to prevent such violations;

(d)     Awarding compensatory damages to Plaintiff for pain, suffering, inconvenience, mental anguish, fear, anxiety, embarrassment, humiliation, and loss of enjoyment of life;

(e)     Awarding economic damages to Plaintiff for lost wages, lost earnings, loss of employee benefits, back pay and front pay;

(f)     Awarding economic damages to Plaintiff for medical and psychological expenses;

(g)     Awarding prejudgment interest to Plaintiff;

(h)     Awarding Plaintiff reasonable attorney's fees, costs of suit and expert fees; and

(i)     Granting such other relief to Plaintiff as the Court deems just, appropriate and equitable.

SIDKOFF, PINCUS & GREEN, P.C.

By:  _____
     Robert A. Davitch, Esquire
     2700 Aramark Tower
     1101 Market Street
     Philadelphia, PA 19107
     (215) 574-0600
     rad@sidkoffpincusgreen.com

SIDNEY L. GOLD & ASSOCIATES, P.C.

By:  _____
     Sidney L. Gold, Esquire
     Eleven Penn Center
     1835 Market Street, Suite 515
     Philadelphia, PA 19103
     (215) 569-1999 (phone)
     SGold@DiscrimLaw.net
     Attorneys for Plaintiff, Shannon M. Sell

Dated: ___3/17/17___

# EXHIBIT "1"



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Philadelphia Direct Dial: (215) 440-2602
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604

Charge Number: 530-2015-01121

Shannon M. Sell
857 Wynnewood Drive
Souderton, PA 18964

                Charging Party

v.

Borough of Bridgeport
65 West 4th Street
Bridgeport, PA 19405

                Respondent

## DETERMINATION

Under the authority vested in me by the Equal Employment Opportunity Commission (EEOC), I issue the following determination as to the merits of the above cited Charge filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII). All requirements for coverage have been met.

Charging Party alleges she was subjected to different terms and conditions of employment, and harassment, because of her sex (female) and and in retaliation for complaining about discriminatory employment practices, in violation of Title VII.

Respondent denies Charging Party's allegations and maintains that it treated her appropriately based on the performance issues she exhibited.

The record shows that Charging Party previously complained of discriminatory treatment by Respondent's former Chief of Police because of her sex (female). The evidence obtained during the investigation demonstrates that Charging Party was subjected to sufficiently pervasive harassment and adverse employment actions from Respondent's former Chief of Police after she complained of discrimination. The investigation revealed that Respondent's purported reason for Charging Party's treatment during the time she was supervised by the former Chief of Police is pretext to mask retaliatory motives.

Based on the foregoing, I have determined that there is reasonable cause to believe that Charging

Party was subjected to disparate terms and conditions of employment, and harassment, because of her sex (female) and her previous opposition to discrimination, in violation of Title VII.

Arising out of the investigation, the Commission has uncovered evidence which indicates that Respondent maintains medical records in violation of the Americans with Disabilities Act of 1990, as amended (ADA), because Respondent keeps medical information in employee personnel files at the facility named in the Charge. The ADA provides that all medical information obtained must be maintained on separate forms, in separate medical files and must be treated as a confidential medical record. Respondent should not place any medical related material in an employee's personnel file.

Based on this analysis, I have determined that the evidence obtained during the investigation establishes a violation of the ADA.

Upon finding reasonable cause that unlawful employment practices have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Conciliation is Respondent's opportunity to voluntarily remedy the unlawful employment practices found to have occurred. Ultimately, any Conciliation Agreement must be acceptable to the Commission. Enclosed is a proposed Conciliation Agreement designed to remedy the unlawful employment practices found to have occurred in this Letter of Determination. Respondent is invited to respond to this proposal within 15 days of receipt.

If Respondent fails to engage in conciliation, or if the Commission determines, in its sole discretion, that conciliation has failed, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

8/31/16

Date

Spencer H. Lewis, Jr., Esq.
District Director

cc:  Joseph J. Santarone, Esq. (For Respondent)
     Robert Davitch, Esq. (For Charging Party)
     Sidney L. Gold, Esq. (For Charging Party)

# EXHIBIT "2"



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7003 0500 0002 5071 2068

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

December 20, 2016

Ms. Shannon M. Sell
c/o Robert Davitch, Esquire
Law Offices of Sidkoff, Pincus & Green
1101 Market Street
Suite 2700, Aramark Tower
Philadelphia, PA  19107

Re:  EEOC Charge Against Borough of Bridgeport
       No. 530201501121

Dear Ms. Sell:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Philadelphia District Office, Philadelphia, PA.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Philadelphia District Office, EEOC
    Borough of Bridgeport